KAB

WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Richard F. Bellis, et al.,

               Plaintiffs,

v.

Navajo County, et al.,

               Defendants.

No. CV-23-08125-PCT-JAT (ASB)

**ORDER**

Plaintiffs Richard F. Bellis (Bellis) and Diane R. Griswold (Griswold), who are represented by counsel, brought this action pursuant to 42 U.S.C. § 1983 and Arizona state law.  Pending before the Court are: (1) Defendants Holbrook and Smigiel's Motion to Dismiss (Doc. 24) and (2) Defendant Naranjo's Motion to Dismiss (Doc. 31).[1]

## I.   Background

In their First Amended Complaint (Doc. 17), Plaintiffs relevantly allege as follows.  In or around May 2020, Griswold purchased a .13-acre parcel of land zoned as commercial-residential located in Overgaard, Arizona (the Property).  Griswold and Bellis moved onto the Property with eight dogs in an RV and mobile home with the intention to live in the RV until they built a permanent home.  In February 2021, Griswold applied for a septic system permit with Navajo County Public Works, as a prerequisite for obtaining a building

---

[1] Although the Parties request oral argument, that request is denied as oral argument would not have aided the Court's decisional process. *See e.g.*, *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

permit with the County, but in March 2021, the application was denied.  Navajo County Public Works notified Griswold that she needed to retain a licensed engineer to design the septic system to comply with Arizona Department of Environmental Quality regulations. Griswold retained an engineer to design the septic system, but the engineer resigned before finishing an approved septic design.  In September 2021, Defendant Navajo County Public Works Director Osgood informed Bellis that if he and Griswold did not "voluntarily move off the property," the County would "have no choice but to initiate legal action."

In October 2021, the Navajo County Attorney's Office sent a letter to Griswold citing zoning violations, including "illegal recreation vehicles/travel trailers being located on the property" and "no sewer or wastewater disposal facilities on the property."  The letter instructed Griswold to remove the referenced RV and mobile home from the Property within ten days or the County Attorney would pursue legal action.  In January 2022, the Navajo County Board of Supervisors voted to initiate a "Civil enforcement" action against Griswold for violations of Section 2203 of the Navajo County Zoning Ordinance, which states that "RV[s] shall not be placed in the following zones: I-1, I-2, [Commercial Residential], or Multi-Family Residential."  In May 2022, the County Attorney served a Notice of Abatement on Griswold, but no action was ever filed with the court.

On July 11, 2022, Defendant Lieutenant Jerry VanWinkle (VanWinkle) of the Navajo County Sheriff's Office filed an Affidavit for Search Warrant with Navajo County Superior Court, requesting to enter the Property "for the purpose of locating and placing Richard Frank Bellis [ ] and Diane Ruth Griswold [ ] under arrest."  As a basis for having the warrants issued, VanWinkle stated: "Neither Bellis or Griswold are supporters of law enforcement and have posted dissenting comments on social media, 'Navajo County Public Works at its best forcing people from their property.  Watch what armed thugs he sends to tear down and destroy personal property.'"  The Affidavit for Search Warrant also referenced that Navajo County deputies went to the Property "for the purpose of serving civil paperwork, 'Notice to Abate Public Nuisance' [but that] Richard Bellis and Diane Griswold were both uncooperative" including by Bellis "refus[ing] . . . to provide

identification." It further listed outstanding misdemeanor warrants for Bellis and Griswold, based partially on driving offenses and related fines.  The Affidavit for Search Warrant made no reference to any alleged illegal items or activity.  In a Supplement to an Incident Report, VanWinkle stated "[w]hen driving by the property of Richard and Diana [sic] I have seen an[] American Flag flying upside down. (This is a sign of anti-government sentiment.). . . .  After discovering that Belliss [sic] and Griswold had warrants and with the fact of their display of disrespect and uncooperative action[,] it was decided that Navajo County Sheriff's Office would obtain a search warrant for the property, residences and vehicles to locate Bellis and Griswold and arrest them on the valid arrest warrants that they had."

Based on VanWinkle's Affidavit for Search Warrant, Navajo County Superior Court Judge Melinda K. Hardy issued two search warrants to: (1) to search Griswold and the Property, and (2) to search Mr. Bellis and the Property.  A third search warrant was issued on July 12, 2022 by Navajo County Superior Court Judge Michala M. Ruechel to search Bellis and Griswold and the Property and to seize any "illegal substances known or suspected to be methamphetamine" and any "illegal paraphernalia" used to ingest or sell methamphetamine.  This search warrant relies upon the same observations of Bellis's and Griswold's purported criticisms of Navajo County officials as in the July 11, 2022 Affidavit for Search Warrant.

On July 12, 2022, at approximately 7:00 a.m., multiple officers, including Defendants VanWinkle, Navajo County Sheriff's Office Sergeants McCracken and Esparza and Show Low Police Officer Naranjo, raided Bellis and Griswold's RV and mobile home with long rifles and guns drawn, wearing body armor and other tactical gear. Bellis and Griswold were arrested and taken to county jail.  Two days later, on July 14, 2022, the Court ordered that Bellis be released because no criminal complaint was filed against him, but due to a "mistake" at the jail, Bellis was not released until 1:00 a.m. on July 15, 2022.  When Bellis returned to the Property, he found that his and Griswold's RV and mobile home were gone, along with all of their personal belongings, including birth

certificates, ID cards, social security cards, all personal records, and the eight dogs. Defendants Osgood and McCracken were present during the destruction and/or removal of Plaintiffs' property.

Also on July 12 or 13, upon information and belief, Navajo County Animal Control took possession of the eight dogs.  Bellis owns the dogs and is the only one with final decision-making authority over the dogs, but unknown officials approached Griswold while she was in jail and demanded that she sign a paper regarding the dogs purporting to relinquish ownership rights, which is authority she did not have.  Griswold does not recall affixing her signature to any such paper.  No one approached Mr. Bellis with any such paper.

On July 18, 2022, Bellis returned to the jail and bailed out Griswold by paying $195 in unpaid fines relating to Griswold's prior misdemeanor driving offenses.  On July 20, 2022, Bellis and Griswold paid $310 in adoption fees to regain possession of seven of the eight dogs, all of which had been neutered and spayed without permission.

Defendant Brandon Smigiel (Smigiel), the animal control officer in Holbrook, refused to turn the dogs back over to Plaintiffs without the payment of adoption fees and refused to provide any information about their eighth dog, which, upon information and belief, had been adopted out while Bellis and Griswold were still in custody.  Bellis and Griswold have not regained possession of their eighth dog.

Although the County retains control of some of Plaintiffs' property, it will not provide a comprehensive catalogue or inventory list of what property it holds.  Plaintiffs have never received notice of an abatement action being filed in court and no such action has been filed in Navajo County Superior Court or elsewhere.

In their Complaint, Plaintiffs allege: (1) a First Amendment retaliation claims in Count One based on Defendant VanWinkle's statements regarding Plaintiffs' speech in the search warrant affidavit and the execution of the search warrants by Defendants

McCracken, Esparza, Naranjo; this Count is asserted against Defendants Navajo County,[2] David Clouse, Jerry VanWinkle, Kyle Esparza, Andrew Naranjo, Chris McCracken, John Osgood, and Janet Osgood (Count One); (2) a claim pursuant to Article 2, section 6 of the Arizona Constitution for violations of freedom of speech against Defendants Navajo County, David Clouse, Jerry VanWinkle, Kyle Esparza, Andrew Naranjo, Chris McCracken, John Osgood, and Janet Osgood based on the affidavit for and execution of the search warrant (Count Two); (3) a Fourth Amendment unconstitutional search claim against Defendants Navajo County, David Clouse, Jerry VanWinkle, Kyle Esparza, Andrew Naranjo, Chris McCracken, John Osgood, and Janet Osgood (Count Three); (4) an unconstitutional search claim pursuant to Article 2, section 8 of the Arizona Constitution against Defendants Navajo County, David Clouse, Jerry VanWinkle, Kyle Esparza, Andrew Naranjo, Chris McCracken, John Osgood, and Janet Osgood (Count Four); (5) a Fifth Amendment takings claim against Defendants Navajo County, David Clouse, Jerry VanWinkle, Kyle Esparza, Andrew Naranjo, Chris McCracken, John Osgood, Janet Osgood, and Smigiel based on the destruction or refusal to return Plaintiffs' property, and the seizure and "alteration" of their dogs (Count Five); (6) a takings claim pursuant to Article 2, section 17 of the Arizona Constitution against all Defendants (Count Six); (7) a Fourteenth Amendment due process claim against Defendants Navajo County, David Clouse, Jerry VanWinkle, Kyle Esparza, Andrew Naranjo, Chris McCracken, John Osgood, Janet Osgood, and Smigiel (Count Seven); (8) a "false arrest and detention claim"[3] based on Bellis's arrest and the failure to immediately release him despite an order to do so against Defendants Navajo County, David Clouse, Jerry VanWinkle, Kyle Esparza,

_____

[2] Plaintiffs assert that the purported *Monell* claim against the County in this Count derives from the execution of the search warrants, which was "fully sanctioned," and the wearing of body armor for the execution of nonviolent warrants, which constitutes "intimidation" and additionally chills speech.  Plaintiffs allege that the practice of wearing body armor to execute arrests is "widespread."

[3] Plaintiffs cite to no legal basis for this claim, such as the Fourth Amendment.  In their briefing, the Parties appear to agree this claim is brought pursuant to state law.

Andrew Naranjo, Chris McCracken, John Osgood, and Janet Osgood (Count Eight); (9) a conversion claim against all Defendants based on the wrongful taking and conversion of Plaintiffs' property (Count Nine); (10) a trespass to chattels claim against all Defendants based on the taking and neutering and spaying of Bellis's dogs (Count Ten); (11) negligence, gross negligence, and intentional infliction of emotional distress against all Defendants based on the violation of Plaintiffs' "constitutional rights when [Defendants] wrongfully arrested and detained [Plaintiffs], held Mr. Bellis after the Court ordered his release, demolished [Plaintiffs'] homes, stole and destroyed (or refused to return) their personal effects, and took the dogs, all without probable cause, or any hearing or opportunity to be heard" (Count Eleven (negligence), Count Twelve (gross negligence), and Count Thirteen (intentional infliction of emotional distress)).

## II. Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

1  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

2      As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the

3  face of the complaint and documents attached thereto.   *Van Buskirk v. Cable News*

4  *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner*

5  *& Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside

6  the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary

7  judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may,

8  however, consider documents incorporated by reference in the complaint or matters of

9  judicial notice without converting the motion to dismiss into a motion for summary

10 judgment.  *Id.*

11 **III.   Discussion**

12      **A.     Holbrook and Smigiel**

13          **1.     *Monell***

14              **a.     Arguments**

15      Defendants Holbrook and Smigiel argue that the *Monell* claim against the City of

16 Holbrook should be dismissed as there are no factual or non-conclusory allegations that

17 Defendant Smigiel's actions were a product of a custom, policy or practice of the City of

18 Holbrook.  Defendants assert that Plaintiffs allegations only state that Smigiel, in his

19 individual capacity, acted consistently with the Navajo County Animal Surrender Form

20 signed by Griswold.

21      In Response, Plaintiffs assert that they have properly pleaded a *Monell* claim against

22 the City of Holbrook because they

23          allege widespread constitutional violations—persisting across
24          the Sheriff's Department, the Superior Court, the Public Works
            Department, to the City of Holbrook for its role related to the
25          Holbrook Animal Control Shelter (as a Navajo County
            contracted pound)—including the wrongful arrest and
26          detention of Mr. Bellis and Ms. Griswold, followed by the
            demolition of Mr. Bellis' and Ms. Griswold's homes, the
27          destruction of their property and personal effects, and the

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

taking and altering of their dogs, all without any hearing or opportunity to be heard.

(Doc. 27 at 11-12.)

### b. Legal Standard

To prove a claim based on a policy, practice, or custom of the City of Holbrook or Defendant Smigiel in his official capacity,[4] Plaintiffs must allege (1) that their constitutional rights were violated by an employee or employees of the City of Holbrook; (2) that the City of Holbrook has customs or policies that amount to deliberate indifference; and (3) that the policies or customs were the moving force behind the violation of Plaintiffs' constitutional rights in the sense that the City of Holbrook could have prevented the violation with an appropriate policy. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-94 (1978); *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002). "Policies of omission regarding the supervision of employees . . . can be policies or customs that create . . . liability . . . , but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." *Gibson*, 290 F.3d at 1194 (quotations omitted).

A "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To support a *Monell* claim for failure to train under § 1983, a plaintiff must allege facts demonstrating that the local government's failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* at 61 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

. . . .

. . . .

---

[4] Defendants assert that Smigiel is an employee of the State of Arizona, not the City of Holbrook. This assertion is not supported by the allegations of the Complaint and the Court will assume Smigiel is an employee of the City of Holbrook for the purpose of deciding the Motion to Dismiss.

### c.      Analysis

The Court could not locate where in the Complaint Plaintiffs allegedly asserted a *Monell* claim against the City of Holbrook.  There is no such claim asserted in any Count of the Complaint and the City of Holbrook is only generally mentioned.  To the extent Plaintiffs intended to state such a claim by naming Defendant Smigiel in his individual and official capacities, the factual basis of a *Monell* claim is unclear from the allegations in the individual Counts of the Complaint.  Plaintiffs' Response to the Motion to Dismiss is wholly unhelpful on this point as it groups actions of other Defendants, who are not alleged to be employees of the City of Holbrook, with actions allegedly taken by Defendant Smigiel.  This grouping fails to establish that any of the Defendants were acting pursuant to a policy, custom, or practice of the City of Holbrook that led to a violation of Plaintiffs' constitutional rights.  Accordingly, to the extent the Parties contend that Plaintiffs intended to state a *Monell* claim in their Complaint, the Court could locate no factually supportive allegations of such a claim in the Complaint, and the *Monell* claim against the City of Holbrook or against Smigiel in his official capacity will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### 2.      Count Five

Defendants assert that Plaintiffs fail to state a Fifth Amendment claim against Defendant Smigiel in Count Five because the Fifth Amendment applies only to the federal government, the federal government is not a defendant, and Smigiel is not a federal agent and did not violate clearly established Fifth Amendment due process law.

In Response, Plaintiffs assert that they have sufficiently alleged a Fifth Amendment Takings claim because they alleged the taking of the dogs without compensation, Smigiel refused to return the dogs without an additional payment, refused to return the dogs unaltered, and refused to provide any information facilitating the return of the eighth dog, which has still not been returned and Plaintiffs were not compensated for (1) costs to regain possession of the dogs; (2) the loss of prospective income from Mr. Bellis' inability to breed his dogs; and (3) the loss of the eighth dog.  Plaintiffs assert that because Defendants

construed Count Five as a due process claim, they cannot now argue that the Takings claim should be dismissed.

In Reply, Defendants assert that Plaintiffs also did not state a Takings claim.  The Court will grant the Motion to the extent it seeks to dismiss a due process claim asserted pursuant to the Fifth Amendment.  Because Defendants did not seek to dismiss the Takings claim until their Reply and Plaintiffs have not been given an opportunity to respond that argument, the Court will not determine whether Plaintiffs stated a Takings claim in Count Five.

### 3.    Count Seven

Defendants assert that there is no case clearly establishing that it was a Fourteenth Amendment violation when Defendant Smigiel acted consistently with the Navajo County Animal Surrender form signed by Griswold and required Plaintiffs to readopt the dogs after their surrender, and it is unclear what process would be due under such circumstances.

With regard to qualified immunity, Plaintiffs assert Smigiel violated Plaintiffs' Fifth and Fourteenth Amendment rights by taking, altering, and refusing to return Plaintiffs' dogs, without payment, and without any hearing or opportunity to be heard and Plaintiffs' right to possession of their animals is a clearly established constitutional right.  (Doc. 27 at 6 (citing *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 977 (9th Cir. 2005)).

Plaintiffs do not identify any cases clearly establishing a right under the circumstances alleged in the First Amended Complaint, but instead argue that the qualified immunity argument fails because Defendant Smigiel makes unwarranted inferences in his own favor that he had access to the Navajo County Animal Surrender Form, that he did not know he was in wrongful possession of the dogs, that he acted consistently with the form, and that he followed all applicable City and County policies and procedures.

In Reply, Defendants assert that they do not request that unwarranted inferences be made, but that their argument stems from Plaintiffs' own allegations that Smigiel acted pursuant to a form allegedly signed by Plaintiff Griswold.  Defendants further assert that

Plaintiffs' Fourteenth Amendment due process claim fails because they identified no process that was due to them, whether they knew or attempted to determine what process might be due, or whether they took any steps to take advantage of that process.

Plaintiffs fail to state a Fourteenth Amendment due process claim against Defendant Smigiel in Count Seven.  Griswold does not allege that she did not sign the animal surrender form, only that she does not remember signing the animal surrender form, which does not create a reasonable inference that she did not sign the form.  Moreover, even if the Court were to make an unwarranted inference that she did not sign the form and the form was somehow fabricated by an unidentified party, Plaintiffs do not allege that Smigiel knew the form was somehow fraudulent.  Accordingly, Plaintiffs do not state a due process claim against Smigiel in Count Seven and that Count will be dismissed as alleged against Defendant Smigiel.

### 4.    Counts Six, Ten, Eleven, Twelve, and Thirteen

Defendants City of Holbrook and Smigiel assert

> [b]ecause Plaintiffs' Amended Complaint alleges the relinquishment of any property right in the eight canines, there is no basis for any of the state law claims. It is difficult to conclude that Plaintiffs were owed just compensation (Count VI), that their canines were converted or somehow trespass [sic] upon (Counts IX and X), that the Holbrook Defendants were negligent or grossly negligent (Counts XI and XII), or that the intentionally inflicted emotional distress on Plaintiffs (Count XIII) by honoring the terms of Ms. Griswold's voluntarily relinquishment of ownership of the cases, and directing their disposition by government authorities.

(Doc. 24 at 9.)

In Response, Plaintiffs assert that Defendants' arguments fail because they directly contradict the allegations in Plaintiffs' First Amended Complaint by assuming Griswold signed the Navajo County Animal Surrender Form when Ms. Griswold alleges that she does not recall signing the form, and further that she did not have the authority to relinquish ownership rights to the dogs.  Plaintiffs further assert that even if Smigiel did know about the form and purportedly acted consistently with a good-faith intention, that is not a defense

to an action in conversion, which Plaintiffs alleged he committed by forcing Plaintiffs to pay fees to regain possession of the dogs, and by refusing to facilitate return of the eighth dog.

The Court will not consider dismissal of claims on a wholesale basis. If Defendants contend Plaintiffs did not state a claim, they must set forth the elements of the individual claims and discuss why Plaintiffs' allegations do not state a claim under those legal standards.[5] Accordingly, the Motion to Dismiss will be denied without prejudice as to the state-law claims.

**B.   Naranjo**

    **1.   *Monell***

Defendants assert that the claim against Naranjo in his official capacity should be dismissed because there are no allegations that either the City of Show Low or Navajo County[6] maintained a policy, practice, or custom that was the moving force behind a constitutional violation.

In Response, Plaintiffs assert:

> Plaintiffs allege widespread constitutional violations—persisting across the Sheriff's Department, the Superior Court, the Public Works Department, to the City of Holbrook—including the wrongful arrest and detention of Mr. Bellis and Ms. Griswold by MCAT in tactical gear for nonviolent misdemeanors (and where violent crimes arrests are almost nonexistent), followed by the demolition of Mr. Bellis' and Ms. Griswold's homes, the destruction or continued withholding of their property and possessions (collectively, "Possessions") despite demands for their return, and the taking and altering of their dogs, all without any hearing or opportunity to be heard. [FAC ¶¶ 18-53.]. . .   These

---

[5] Based on the limited briefing on the individual state-law claims, Plaintiffs state a plausible claim of conversion against Defendant Smigiel. *See Focal Point, Inc. v. U-Haul Co. of Arizona*, 746 P.2d 488, 490 (Ariz. Ct. App. 1986) ("Good faith belief or intention is no defense to a conversion action in Arizona").

[6] Plaintiffs alleged that Naranjo acted as an agent of Navajo County, although he was a Show Low Police Officer.

1
2
3
4
5

> orchestrated and officially sanctioned actions necessarily demonstrate the existence of a policy or custom as the moving force behind such actions. The policy or custom is clearly deficient and is likely to (and did) lead to constitutional injury, and Plaintiffs were clearly harmed by the policy or custom because their shelter and possessions were taken, including one dog, any possibility for a means of income through dog breeding, and two dogs subsequently sold to make ends meet.

6
7
8
9
10
11
12
13
14

The Court cannot ascertain, even from Plaintiffs' Response, what policy, practices, or customs are allegedly held by Navajo County to support a *Monell* claim. Indeed, in their Response, Plaintiffs cite to allegations about the actions of the Sheriff's Department, the Superior Court, the Public Works Department, and the City of Holbrook, and do not mention Navajo County. To the extent Plaintiffs claim that Navajo County sets the policies for each of the entities and that those entities and their employees were working pursuant to policies or practices instituted by Navajo County, such an allegation is not actually made or supported by any facts. Accordingly, Plaintiffs have failed to state a *Monell* claim against Navajo County or Defendant Naranjo in his official capacity. *See, e.g., A.E. ex rel.*

15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. This standard applies to *Monell* claims . . . .") (citations omitted); *Dougherty v. City of Covina*, 654 F.3d 892, 900–901 (9th Cir. 2011) ("*Dougherty's Monell* and supervisory liability claims lack any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*. . . . The Complaint lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation."); *Hyer v. City & Cnty. of Honolulu*, CIV. NO. 19-00586 HG-RT, 2020 WL 7038953, at *6 (D. Hawaii 2020) ("Prior

to 2009, the Ninth Circuit . . . regularly held that a claim of municipal liability under Section 1983 was sufficient to withstand a motion to dismiss based on nothing more than bare allegations of an unconstitutional policy, practice, or custom.  The low pleading threshold was rejected by the United States Supreme Court in [*Iqbal*].  Since *Iqbal*, courts in the Ninth Circuit have repeatedly rejected *Monell* claims based on conclusory allegations that lack factual content from which one could plausibly infer municipal liability.") (citations omitted); *Brown v. Cnty. of Mariposa*, No. 118CV01541LJOSAB, 2019 WL 4956142, at *4 (E.D. Cal. Oct. 8, 2019) ("In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of an unlawful policy. . . . [W]hile the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court.") (citations and internal quotation marks omitted).

### 2.     First Amendment Retaliation (Count One)

Defendants allege that the First Amendment retaliation claim against Naranjo should be dismissed because Plaintiffs only allege that Naranjo was involved in the execution of the search warrant and filling out certain documents and there are no allegations that Naranjo was aware of Plaintiffs engaging in protected speech, or, consequently, that their alleged speech could even be a substantial or motivating factor in Naranjo's minimal, and conclusory, alleged conduct.  Defendants further assert that the affidavit supporting the warrant shows that Plaintiffs had outstanding arrest warrants, giving probable cause for their arrests and precluding a First Amendment retaliation claim.

In Response, Plaintiffs assert that the facts alleged against Naranjo are that he was part of the Major Crimes Apprehension Team that executed search warrants upon Plaintiffs with long rifles, body armor, and other tactical gear, upon which Plaintiffs were arrested and taken to county jail and Naranjo signed the Release Questionnaire for Mr. Bellis, which listed Navajo County Sheriff's Office and its address as the Agency.  Plaintiffs assert that they stated a First Amendment retaliation claim against Defendant Naranjo because "the search warrant affidavit sets forth Plaintiffs' protected speech regarding Navajo County

1   officials as 'armed thugs,' for which a reasonable inference is that the affidavit was

2   attached to the search warrants that Naranjo executed [which creates an inference that

3   Naranjo] was aware of Plaintiffs' speech regarding Navajo County officials, and executed

4   unconstitutional search warrants in retaliation for that speech." (Doc. 40 at 9-10.)

5       Generally, the First Amendment prohibits government officials from subjecting an

6   individual to retaliatory actions for engaging in protected speech. *Nieves v. Bartlett*, 587

7   U.S. 391, 398 (2019). To recover under § 1983 for such retaliation, a plaintiff must prove:

8   (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to

9   adverse action by the defendant that would chill a person of ordinary firmness from

10  continuing to engage in the protected activity; and (3) there was a substantial causal

11  relationship between the constitutionally protected activity and the adverse action.

12  *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (citations omitted). Additionally, with

13  a limited exception, a plaintiff must plead the absence of probable cause to support a claim

14  for retaliatory arrest. *Nieves*, 587 U.S. at 406. An exception exists "for circumstances

15  where officers have probable cause to make arrests, but typically exercise their discretion

16  not to do so. In such cases, an unyielding requirement to show the absence of probable

17  cause could pose 'a risk that some police officers may exploit the arrest power as a means

18  of suppressing speech.'" *Nieves*, 139 S. Ct. at 1727 (citation omitted).

19      Plaintiffs allegations against Naranjo are extremely sparse and Plaintiffs do not

20  allege that any of Naranjo's actions were motivated by Plaintiffs' speech. The allegations

21  Plaintiffs point to in order to support their arguments in Response to the Motion to Dismiss

22  are unhelpful. Rather than showing where in the First Amended Complaint they made

23  relevant allegations against Defendant Naranjo, Plaintiffs request that the Court make

24  inferences about facts that are simply not alleged in the First Amended Complaint or that

25  are alleged against other Defendants. There is no explanation for why the allegations at

26  issue were not actually made or why Plaintiffs were not clear about the claims alleged

27  against Defendant Naranjo. Plaintiffs request that the Court interpret allegations and facts

28  made against some individual Defendants and extrapolate that Plaintiffs intended to assert

such facts against other Defendants.  Such a practice has been soundly rejected since *Iqbal*. *See Iqbal*, 556 U.S. at 663 (In *Bivens* and § 1983 actions, plaintiff "must plead that **each** Government-official defendant, **through his own individual actions**, has violated the Constitution.") (emphasis added).  Accordingly, Plaintiffs fail to state a First Amendment retaliation claim against Defendant Naranjo in the First Amended Complaint and that claim will be dismissed.

### 3.      Fourth Amendment (Count Three)

Defendant Naranjo argues that Plaintiffs fail to state a Fourth Amendment claim against him because Plaintiffs had outstanding arrest warrants, which gave the government agents authority to enter Plaintiffs' home to arrest them since they had reason to believe Plaintiffs were inside.  Defendants further assert that the arrest warrants "gave sufficient probable cause for the search warrants."  (Doc. 31 at 11.)  In Response, Plaintiffs assert that the First Amended Complaint alleges that Naranjo executed a facially invalid search warrant and executed the search warrants in a manner that resulted in "indiscriminate rummaging through [Plaintiffs'] belongings."  Plaintiffs assert that defendant is not insulated from liability for executing a facially unconstitutional search warrant.  Plaintiffs assert that the search warrants were facially invalid because they cited violations of "Obstructing Court Order," "Show Cause Contempt Failure to Pay," and a "Probation Violation" in Justice Courts, but do not provide a "fair probability" that any contraband or evidence of such crimes would be found in a particular place.

Plaintiffs further assert that the search warrant was not specific and only discusses "[a]ny illegal items or contraband located on the property and or inside structures or vehicles," which rendered the warrant unconstitutionally overbroad.  Plaintiffs assert that they have sufficiently alleged facts demonstrating that Naranjo could not have had a good faith reliance on these facially deficient warrants.

In Reply, Defendants asserts that even in the absence of a search warrant, law enforcement personnel, including Naranjo, acted lawfully in the execution of undisputed arrest warrants as to both Plaintiffs.

It appears that the Parties dispute whether the Fourth Amendment claim is an unconstitutional arrest claim or an unconstitutional search claim. Defendant appears to suggest that it must be an unconstitutional arrest claim because Plaintiffs have not included enough allegations linking Naranjo to the search of Plaintiffs' property. However, taking all reasonable inferences in favor of Plaintiffs, Plaintiffs have stated a Fourth Amendment unconstitutional search claim against Defendant Naranjo based on their allegations that Naranjo aided in the execution of the search warrant and that the search warrant was invalid and unconstitutionally overbroad on its face. Accordingly, the Motion to Dismiss will be denied as to the unconstitutional search claim alleged against Naranjo in Count Three.

### 4.      Fifth Amendment Takings (Count Five)

Defendants assert that Plaintiffs fail to state a Fifth Amendment Takings claim against Defendant Naranjo because there are no allegations that Naranjo took anything and the takings clause does not apply to the exercise of police powers and a voluntary transfer of property does not support a takings claim, and Plaintiffs allege that the taking of the dogs occurred after Plaintiff Griswold signed the animal surrender form.

In Response, Plaintiffs assert that Naranjo was not acting pursuant to a valid exercise of police power and Plaintiffs have received no compensation for their property that was taken and not returned, that Naranjo executed the search warrant following which Plaintiffs' possessions were taken, and it is a reasonable inference that liability can be attributed to Naranjo for effecting a taking of Plaintiffs' possessions, including Bellis's and Griswold's RV and mobile home and all of their personal belongings, including birth certificates, ID cards, social security cards, all personal records, and the eight dogs.

Defendants did not meaningfully reply to Plaintiffs' Response.

Here, Plaintiffs allege that Naranjo executed a search warrant on their property, that when they returned to the property, their RV and other possessions were gone, and police officers were involved in the destruction and/or removal of their property. Under these facts, Plaintiffs have stated a plausible Fifth Amendment Takings claim against Defendant Naranjo and the Motion to Dismiss will be denied as to the Fifth Amendment Takings

claim.[7]

### 4.    Fourteenth Amendment Due Process (Count Seven)

Defendant Naranjo asserts that Plaintiffs fail to state a Fourteenth Amendment due process claim against Naranjo because Plaintiffs did not allege that Naranjo was involved with the taking of dogs, spaying or neutering dogs, or putting the dogs up for adoption, and Griswold surrendered the dogs.

In Response, Plaintiffs assert that the due process claim is in relation to Plaintiffs' possessions that were taken without a court order while the Officers executed the search warrant.   Plaintiffs assert that they have constitutionally protected interests in their property, and, at the very least, failed to receive proper notice and a hearing prior to the deprivation of their property, and Naranjo was involved in the deprivation of their property.

In Reply, Defendants assert that there are no allegations in the complaint that Naranjo took anything.

As noted above, Plaintiffs allege that Naranjo executed a search warrant on their property, that when the returned to the property, their RV and other possessions were gone, and police officers were involved in the destruction and/or removal of their property. Construing all inferences in Plaintiffs' favor, Plaintiffs have stated a plausible Fourteenth Amendment due process claim against Defendant Naranjo based on the taking and/or destruction of their property without process and the Motion to Dismiss will be denied as to that claim.

. . . .

. . . .

---

[7] Naranjo's argument is incomplete as to the facts alleged in Plaintiffs' First Amended Complaint in arguing that he is entitled to qualified immunity.  Regardless, the Record is simply not developed enough for the Court to determine whether qualified immunity applies to the remaining federal claims at this juncture.  *See, e.g.*, *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) ("When, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies.") (internal citation omitted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**5.      State Law Claims**

**a.      Notice of Claim**

Defendants assert that Plaintiffs' state law claims against Naranjo should be dismissed because Plaintiffs did not comply with Arizona Revised Statutes section 12-821.01 because Naranjo was never properly served with a Notice of Claim.  In Response, Plaintiffs assert that Naranjo's affidavit improperly contradicts Plaintiffs' allegations that they complied with Arizona Revised Statutes 12-821.01,[8] but even if the Court were to convert the Motion to Dismiss into a Motion for Summary Judgment, Plaintiffs did serve Naranjo by mailing him the Notices of Claim to two of his known addresses via Federal Express.  In Reply, Defendants assert that service on an individual cannot be accomplished by mail, and Plaintiffs do not purport to have served Naranjo any other way.

Defendants contend that service by mail on an individual is not proper "service" under Arizona Revised Statutes section 12-821-01.  Arizona Revised Statutes section 12-821.01 relevantly provides

> Persons who have claims against a public entity, public school or a public employee shall ***file*** claims with the person or persons authorized to accept service for the public entity, public school or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues.

Ariz. Rev. Stat. section 12-821.01(A) (emphasis added).

In *Lee v. State*, the Arizona Supreme Court was tasked with deciding the meaning of the word "file" within the statute and what the phrase "as set forth in the Arizona rules of civil procedure" was modifying.  182 P.3d 1169 (Ariz. 2008).  In deciding these issues, the Arizona Supreme Court noted, "[t]he legislature could have specified what sort of

---

[8] In their First Amended Complaint, Plaintiffs alleged that "[i]n accordance with A.R.S. § 12-821.01, Mr. Bellis and Ms. Griswold filed a Notice of Claim with the Navajo County Board of Supervisors, the Navajo County Clerk, John Osgood, David Clouse, Jerry VanWinkle, Sergeant McCracken, Sergeant Esparza, City of Holbrook, Brandon Smigiel, and other relevant County employees."  (Doc. 17 at 9.)

delivery constitutes a filing, or restricted the evidence relevant to showing something was filed, but it did not." *Id.* at 1172.  The Supreme Court further reasoned:

> The dissent argues that the statute precludes Lee from relying on proof of mailing because it requires a claimant to "file . . . as set forth in the Arizona rules of civil procedure." A.R.S. § 12–821.01(A). . . .  The dissent's reading of the statute omits critical language.[9] Claimants must "file claims *with the person or persons authorized to accept service for the public entity or public employee* as set forth in the Arizona rules of civil procedure." *Id.* (emphasis added).  Arizona Rules of Civil Procedure 4.1(h)-(j) clearly "set forth" the "person or persons authorized to accept service" for various public entities.  By contrast, nothing in the rules defines how *filing* must occur. ***The rules do not prohibit mail as a form of filing*** nor do they indicate that mailing, though probative, is inadmissible to prove filing. We agree with the dissent that to successfully file requires receipt, but we decline to interpret "file" to forbid a claimant from proving a contested filing by pointing to the fact of mailing.

(*Id.* (emphasis added).)  The Court noted that "absent a clearer legislative directive than the word 'file,' we will not deprive [Plaintiff] of the benefit of the mail delivery rule." *Id.* at 1173.  The Court then stated "[w]e hold that a filing under A.R.S. § 12–821.01(A) may be accomplished through the regular mail." *Id.*

Defendants attempt to distinguish *Lee* because *Lee* involved filing with an entity, and not filing on an individual, as in this case.  Defendants assert that because Arizona law allows mailing as a method of *service* on an entity, but does not allow mailing as a method of *service* on an individual, mailing is inconsistent with Arizona Revised Statutes § 12-821.01's requirement that the *filing* be consistent with the Arizona Rules of Civil Procedure.

---

⁹ Defendants rely on *Simon v. Maricopa Med. Ctr.*, 234 P.3d 623, 629 (Ariz. Ct. App. 2010) for the rule that filing a claim against an individual is akin to serving that claim, but the *Simon* Court's recitation of the rule is dicta as it did not decide the issue of whether mail to an individual's address constituted filing, and regardless, relied on the same omission rejected by the Arizona Supreme Court in *Lee* when reciting the rule.

1    This argument is problematic, however, because it ignores *Lee*'s reasoning that

2    *filing* is not synonymous with *service* and that the reference to the Arizona Rules of Civil

3    Procedure in the statute was modifying the phrase relating to who is authorized to accept

4    service.   Moreover, while at least one District Court Judge has accepted the distinction

5    made by Defendants,[10]Arizona Courts have stated that *Lee* allows mailing as a form of

6    filing, even when the Defendant is an individual.  *See, e.g.*, *Iknadosian v. Mahon*, No. 1

7    CA-CV 13-0205, 2014 WL 2548975, at *2 (Ariz. Ct. App. June 5, 2014) (Arizona Revised

8    Statutes § 12-821.01(A)'s requirement that a person must "'file' a copy of the notice of

9    claim with the employee" "is met where a copy of the notice of claim is (1) personally

10   delivered to the employee, either in person or by mail, (2) left with a person of suitable age

11   who is residing with the employee, or (3) served on a person who is authorized to accept

12   service on behalf of the employee."); *see also Kenney v. City of Mesa*, No. 1 CA-CV 12-

13   0377 A, 2012 WL 5499424, at *2 (Ariz. Ct. App. Nov. 13, 2012) ("*Lee* rejected the

14   argument that the statutory language, 'file as set forth in the Arizona Rules of Civil

15   Procedure,' requires formal service of a notice of claim as one would file with a court.")

16   (cleaned up).

17          While none of these opinions are binding, these Arizona Court of Appeals' decisions

18   are consistent with this Court's reading of *Lee*.  Accordingly, because Defendants' entire

19   argument rests on mailing being an insufficient form of service and any consideration of

20   whether the Notice of Claim was actually mailed is not properly resolved on a Motion to

21   Dismiss, the Motion to Dismiss will be denied without prejudice as to the Notice of Claim

22   argument.

23   . . . .

24   . . . .

25   _____

26          [10] *See Stevens v. Arizona*, No. CV-23-00770-PHX-SMB, 2024 WL 418132, at *6

27   (D. Ariz. Feb. 5, 2024) (stating that "*Lee* simply did not interpret the notice of claim statute
     or the Arizona Rules of Civil Procedure as they pertain to service on an individual" and

28   finding that an individual must be *served* in accordance with the Arizona Rules of Civil
     Procedure.").

**b.    Failure to State a Claim**

**i.    Arizona Constitution Article 2, section 6 (violations of freedom of speech) (Count Two), Arizona Constitution Article 2, § 8 (Count Four) (Unconstitutional search), Arizona Constitution Article 2, section 17 (Count Six) (takings)**

Defendants assert that to the extent Plaintiffs have failed to allege federal constitutional claims against Naranjo, they have also failed to allege claims falling under the state law constitutional provisions mirroring those federal claims.  For the reasons discussed as to the federal claims, the Motion to Dismiss will be granted as to Count Two, but will be denied as to Counts Four and Six.

**ii.    False Arrest and Detention (Count Eight)**

Defendants assert that Plaintiffs do not state a claim against Naranjo for false imprisonment because the arrest warrant supported the arrest on the misdemeanor charges and Plaintiffs do not otherwise plead a false arrest claim against Naranjo.

In Response, Plaintiffs assert that the arrests did not occur "pursuant to valid legal process," and Defendants do not address that Mr. Bellis was not independently released from jail.

The Court could not locate any allegations in the First Amended Complaint that there was not probable cause to arrest Plaintiffs for the misdemeanor violations.  As for the allegations that Mr. Bellis was wrongfully kept in jail past the time of his release, there are simply no factual allegations tying Defendant Naranjo to the additional time Mr. Bellis spent in jail.  Accordingly, Plaintiffs fail to state a state-law claim of false arrest or false imprisonment against Naranjo and that claim will be dismissed.

**iii.    Conversion (Count Nine), Trespass to Chattels (Count Ten), Negligence (Count Eleven), Gross Negligence (Count Twelve)**

Defendants assert that Plaintiffs' allegation that Naranjo participated in the execution of a search warrant, and filled out post-arrest paperwork does not show he converted property, unlawfully trespassed to chattels, or was negligent or grossly negligent in any way.  As noted above, Plaintiffs allege that Naranjo executed a search warrant on

their property, that when they returned to the property, their RV and other possessions were gone, and police officers were involved in the destruction and/or removal of their property. Construing all inferences in Plaintiffs' favor, Plaintiffs have stated a plausible state-law claims of conversion, trespass to chattels, negligence, and gross negligence against Defendant Naranjo, and the Motion to Dismiss will be denied as to those claims.

### iv. Intentional Infliction of Emotional Distress (Count Thirteen)

Defendants assert that Plaintiffs' threadbare allegations against Naranjo do not meet the elements of a claim of intentional infliction of emotional distress.

Plaintiffs have plausibly stated a claim of intentional infliction of emotional distress against Naranjo and the Motion to Dismiss will be denied as to that claim.

### C.   Punitive Damages

Defendants Smigiel and Naranjo assert that they are immune from punitive damages pursuant to Arizona Revised Statutes § 12-820.04, and that the punitive damages relief for § 1983 claims should be dismissed because Plaintiffs do not allege that Naranjo engaged in wanton, willful, or outrageous conduct.

In Response, Plaintiffs assert that their allegations could allow a jury to conclude that Naranjo acted with reckless or callous indifference to Plaintiffs' rights. Plaintiffs further assert that to the extent Smigiel or Naranjo are found to be acting outside the scope of their employment, they would not be entitled to immunity pursuant to Arizona Revised Statutes § 12-820.04.

It is premature at this stage to determine whether Plaintiffs may be entitled to punitive damages, and the request to dismiss that request for relief will be denied.

**IT IS ORDERED:**

(1)   The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motions to Dismiss (Doc. 24, 31).

(2)   Defendants Holbrook and Smigiel's Motion to Dismiss (Doc. 24) is **granted in part and denied in part** as follows:

(a)   The Motion is granted as to the *Monell* claim against the City of

Holbrook and any constitutional claims against Smigiel in his official capacity, any due process claim asserted against Defendant Smigiel pursuant to the Fifth Amendment, and the Fourteenth Amendment due process claim against Defendant Smigiel in Count Seven, and those claims are dismissed without prejudice.

          (b)     the Motion is otherwise denied as set forth herein.

     (3)     Defendants Navajo County and Naranjo's Motion to Dismiss (Doc. 31) is **granted in part** and **denied in part** as follows:

          (a)     The Motion is granted as to any *Monell* claims asserted against Navajo County or Defendant Naranjo in his official capacity, the First Amendment retaliation claim against Defendant Naranjo in Count One, the state law claim asserted against Naranjo in Count Two for alleged violations of Arizona Constitution Article 2, and the state-law claim of false arrest or false imprisonment against Naranjo in Count Eight, and those claims will be dismissed without prejudice.

          (b)     the Motion is otherwise denied as set forth herein.

Dated this 27th day of June, 2024.

James A. Teilborg
Senior United States District Judge